724 So.2d 210 (1998)
ULTRA FABRICATORS, INC., Thomas Domingue, Cyrus Guidry, and Paul Debaillon, Trustee for the Bankruptcy Estate of the Debtor, Avery J. Domangue
v.
M C BANK AND TRUST COMPANY.
No. 97 CA 1947.
Court of Appeal of Louisiana, First Circuit.
September 25, 1998.
Writ Denied December 18, 1998.
*211 Warren D. Rush, Lafayette, Robert E. Arceneaux, New Orleans, for Plaintiffs-Appellants Ultra Fabricators, Inc., Thomas Domingue, Cyrus Guidry, Paul Debaillon and Avery J. Domangue.
Michael H. Rubin, Baton Rouge, Andrew S. Reed, Morgan City, for Defendant-Appellee M C Bank & Trust Company.
BEFORE: FITZSIMMONS and GUIDRY, JJ., and CHIASSON,[1] J. Pro Tem.
REMY CHIASSON, Judge Pro Tem.
Plaintiffs, Ultra Fabricators, Inc. (Ultra Fab), Cyrus Guidry, Paul Debaillon[2] and Thomas Carl Domingue, appeal from a judgment of the trial court, sustaining a peremptory exception of no cause of action and dismissing plaintiffs' claims against defendant, M C Bank and Trust Company (M C Bank).

FACTUAL BACKGROUND
According to the allegations set forth in plaintiffs' second supplemental and amended petition, Ultra Fab entered into a banking relationship with M C Bank on or about June 29, 1992. This relationship included depositing funds into a checking account, making payments of payroll taxes to M C Bank for remittance to the Internal Revenue Service, and borrowing funds from M C Bank.
On or about June 29, 1992, M C Bank and Ultra Fab entered into a written loan agreement pledging and assigning accounts receivable whereby M C Bank would advance Ultra Fab up to 80% of the value of the accounts receivable of Ultra Fab, which were 90 days or less old, up to the maximum of $500,000.00 (the "Receivable Line").[3] Pursuant to the terms of the Receivable Line, M C Bank had the power to, and in fact, required all receivables of Ultra Fab to be directed to a lock-box to which only M C Bank had access.
The petition further alleged that, under the Receivable Line, M C Bank was obligated to deposit directly into Ultra Fab's Demand Deposit Account at the bank the amount requested by Ultra Fab each time a request was made, provided that the bank at such time had in its possession sufficient invoices to support the request. M C Bank was also empowered at any time, whether or not one or more events of default existed to "... directly collect and receive all proceeds and/or payments arising under or in any way accruing from the Collateral ..." and for that purpose was appointed as the attorney-in-fact of Ultra Lab. According to the petition, as agent and attorney-in-fact of Ultra Fab under the Receivable Line, M C Bank acted in a fiduciary capacity towards Ultra Fab.
Cyrus Guidry, Avery Domangue and Thomas Domingue each executed commercial pledge agreements wherein they pledged all of their shares of stock in Ultra Fab as security for the Receivable Line, and they also executed continuing guarantees in connection with the Receivable Line in the amount of $1,000,000.00.
On or about August 11, 1992, Ultra Fab executed a promissory note in the amount of $400,000.00 payable to the order of M C Bank. This note was guaranteed by the U.S. Small Business Administration and was secured by all of the inventory, equipment, general intangibles and fixtures of Ultra Fab, as well as all proceeds and products derived therefrom (the "Working Capital Loan").[4] According to the petition, M C Bank was appointed as the attorney-in-fact of Ultra Fab to collect receivables under the Working Capital Loan and, as agent and attorney-in-fact of Ultra Fab, M C Bank acted in a fiduciary capacity towards Ultra Fab.
On or about July 21, 1993, the Receivable Line was increased from $500,000.00 to $650,000.00 *212 pursuant to the execution of a written promissory note and commercial security agreement. According to the petition, this increase was evidenced by a letter dated July 21, 1993 which was written and signed by Gerald A. Listi, Senior Vice-President of M C Bank. The letter indicated that the Receivable Line would still be governed by the June 29, 1992 Loan Agreement. Cyrus Guidry, Avery Domangue and Thomas Domingue, along with their spouses, executed continuing guarantees in the amount of $650,005.00 in favor of M C Bank.
On or about May 10, 1994, an additional loan in the amount of $120,000.00 was made by M C Bank to Ultra Fab. This loan was evidenced by a written promissory note, commercial security agreement and a settlement sheet from the U.S. Small Business Administration executed by the duly authorized representatives of M C Bank and Ultra Fab.
From July of 1993 through December of 1995, numerous promissory notes representing side loans were made by Ultra Fab and payable to M C Bank. Most or all of these loans were satisfied by Ultra Fab, including but not limited to one side loan which became due on October 10, 1995, in the face amount of $34,000.00.
On or about February 10, 1995, the Receivable Line was increased to $850,000.00, but remained subject to the terms and conditions set forth in the original Receivable Line Agreement. The increase was evidenced by a writing signed by duly authorized representatives of M C Bank and Ultra Fab.
On or about February 22, 1995, the Receivable Line was increased to $1,450,000.00, but remained subject to the terms and conditions set forth in the original Receivable Line Agreement. The increase was evidenced by a writing signed by duly authorized representatives of M C Bank and Ultra Fab.

PROCEDURAL HISTORY
On July 10, 1996, plaintiffs filed a "Petition For Breach of Contract and Lender's Liability." In response to this petition, M C Bank filed a peremptory exception pleading the objection of no cause of action, alleging that the petition failed to state a cause of action for lender liability in the absence of a written contract.
Shortly before the hearing on the peremptory exception, plaintiffs filed a "Supplemental And Amended Petition For Breach of Contract and Lender's Liability." The trial court allowed plaintiffs to file this petition over the objection of M C Bank. After a hearing in which both the original petition and the Supplemental and Amended Petition were considered, the trial court rendered judgment on December 18, 1996, granting the peremptory exception of no cause of action. The judgment allowed plaintiffs to amend its petition on or before January 20, 1997.
On January 21, 1997, plaintiffs filed a "Second Supplemental and Amended Petition For Breach of Contract and Lender's Liability." In response, M C Bank filed a peremptory exception pleading the objection of no cause of action.
After a hearing, the trial court granted the peremptory exception of no cause of action and dismissed plaintiffs' claims. It is from this judgment that plaintiffs now appeal.

DISCUSSION
The peremptory exception pleading the objection of no cause of action is a procedural device used to test whether, under the allegations of the petition, the law affords any remedy for the grievance asserted. Stafford Construction Company, Inc. v. Terrebonne Parish School Board, 612 So.2d 847, 850 (La.App. 1st Cir.1992), writ denied, 614 So.2d 82 (La.1993); Ward v. Tenneco Oil Company, 564 So.2d 814, 820 (La.App. 3rd Cir. 1990); Bellah v. State Farm Fire and Casualty Ins. Co., 546 So.2d 601, 603 (La.App. 3rd Cir.1989). The purpose of this objection is to determine the legal sufficiency of a petition, and for purposes of ruling on the exception pleading the objection of no cause of action, the court must accept all well-pleaded facts in the petition and any annexed documents as true. The court should sustain the exception only if the law affords no remedy under any evidence that is admissible under the pleadings, Stafford Construction Company, Inc. v. Terrebonne Parish School Board, 612 So.2d at 850; Hunt v. Milton J. Womack, *213 Inc., 616 So.2d 759 (La.App. 1st Cir.), writ denied, 623 So.2d 1309 (La.1993). No evidence may be introduced to support or controvert the objection of no cause of action. La. C.C.P. art. 931.
An appellate court should review a trial court's ruling sustaining an exception of no cause of action de novo because "the exception raised a question of law and the lower court's decision is based only on the sufficiency of the petition." City of New Orleans v. Board of Commissioners of the Orleans Levee District, 93-0690, p. 28 (La.7/5/94); 640 So.2d 237, 253.
It is the contention of M C Bank that plaintiffs have failed to state a cause of action under the Louisiana Credit Agreement Statutes. La. R.S. 6:1121-1124. Adopted by Act 531 of 1989, La. R.S. 6:1121-1123[5] provides a statute of frauds in actions based on credit agreements as defined in the statute. Whitney National Bank v. Rockwell, 94-3049, p. 10 (La.10/16/95); 661 So.2d 1325, 1331.
La. R.S. 6:1121 is a definitional section that defines the key terms. The pertinent term here is "credit agreement," which is defined as "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation."
La. R.S. 6:1122 provides that "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."
La. R.S. 6:1123 provides as follows:
A. The following actions shall not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements of R.S. 6:1122:
(1) The rendering of financial or other advice by a creditor to a debtor.
(2) The consultation by a creditor with a debtor.
(3) The agreement of a creditor to take or not to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under a prior credit agreement, or extending installments due under a prior credit agreement.
B. A credit agreement shall not be implied from the relationship, fiduciary or otherwise, of the creditor and the debtor.
Finally, La. R.S. 6:1124 provides as follows:
No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof. Any claim for breach of a fiduciary responsibility of a financial institution or any officer or employee may only be asserted within one year of the first occurrence thereof. This Section is not limited to credit agreements and shall apply to all types of relationships to which a financial institution may be a party.
The allegations set forth in plaintiffs' second supplemental and amended petition focus on five separate incidences which give rise to several causes of action.

OCEAN BARGE CAUSE OF ACTION
The allegations set forth in the petition in support of this cause of action focus on M C Bank's written demand upon Ocean Barge, Inc. for immediate payment for services rendered and goods provided by Ultra Fab, which allegedly led to the loss of two projects. According to plaintiffs, the actions of M C Bank constituted negligence, a breach of M C Bank's fiduciary duties, and a breach of the covenants of good faith and fair dealing.
Plaintiffs do not dispute that M C Bank was entitled to make such a demand under *214 the Receivable Line. The petition alleges only that they should not have made such a demand.
Under La. R.S. 6:1124, unless expressly set forth in a written agency or trust agreement, no fiduciary responsibilities of a financial institution arise toward customers or third parties. Bespress, Inc. v. Capital Bank of Delhi, 616 So.2d 795, 798 (La.App. 2nd Cir.1993). Additionally, the fiduciary responsibility and liability of a financial institution or any officer or employee shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof. La. R.S. 6:1124.

LOSS OF LOAN AND LOAN COMMITMENT CAUSE OF ACTION
The allegations in support of this cause of action center solely on M C Bank's failure to fund a FMHA loan in spite of numerous oral and written promises to do so. The alleged agreement by M C Bank to fund the loan in question is clearly an agreement to lend money or make any other financial accommodation and constitutes a credit agreement as defined in La. R.S. 6:1121. As noted earlier, the Louisiana Credit Agreement Statutes preclude any action based upon an agreement to lend money, or make any other financial accommodation, unless that contract is in writing.

SAMEDAN LOAN CAUSE OF ACTION
The allegations in support of this cause of action maintain that M C Bank breached its fiduciary duties as well as the covenants of good faith and fair dealing owed to its principal, Ultra Fab, under the express provisions of the Receivable Line and the Working Capital Loan in declining Samedan's settlement offer of $100,000.00 to permit Samedan to pay Ultra Fab's subcontractors. Plaintiffs admit that Ultra Fab pledged its interest in the Samedan contract and any proceeds to M C Bank.
As noted earlier, no fiduciary responsibilities of a financial institution arise toward customers or third parties unless expressly set forth in a written agency or trust agreement. La. R.S. 6:1124; Bespress v. Capital Bank of Delhi, 616 So.2d at 798. Thus, the allegations do not support a cause of action under this theory of recovery.
It is also clear that the pleadings failed to state a cause of action arising from a "good faith" violation. The petition does not allege, either expressly or impliedly, that any of M C Bank's actions or failures to act were prompted by fraud, ill will, or sinister motivation. See Commercial National Bank in Shreveport v. Audubon Meadow Partnership, 566 So.2d 1136, 1139 (La.App. 2nd Cir. 1990).

FAILURE TO PAY FICA AND WITH-HOLDING TAXES CAUSE OF ACTION
The petition alleges that the acts of M C Bank in failing to forward payments for federal taxes constituted a breach of fiduciary duty, and/or bad faith and unfair dealing, and/or fraud and/or conversion of these funds.
The petition does not allege that there were sufficient funds to honor these checks. Rather, it is alleged that M C Bank "willfully and intentionally failed to remit said payments to protect itself and/or other creditors chosen by it over the IRS...". It was further alleged that M C Bank was instructed to send a $200,000.00 invoice payment to the Internal Revenue Service but instead, applied this invoice payment to a side loan which M C Bank had previously made with Ultra Lab.
Again, plaintiffs have failed to allege any facts to maintain a cause of action for a breach of fiduciary duty or bad faith. Furthermore, plaintiffs have not established a cause of action for conversion. A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. Labbe v. Premier Bank, 618 So.2d 45, 46 (La.App. 3rd Cir.1993). The petition does not allege that any of M C Bank's actions constitute a wrongful exercise or assumption of authority.

*215 NSF CHECKS CAUSE OF ACTION
The petition alleges that M C Bank's acts in using the funds committed by checks to pay other creditors and applying said sums to pay its own note constituted a breach of their agreement (as evidenced by the Receivable Line and the promissory note). The petition further alleges that M C Bank was in bad faith in accelerating the note and applying the funds prematurely, resulting in the checks being returned because of insufficient funds.
These allegations do not form the basis of a cause of action. Plaintiffs do not allege that the note in question could not be accelerated or that said amount was not due and owed to M C Bank; rather, they allege only that M C Bank was in bad faith in doing so. Plaintiffs have alleged no facts in support of the allegation that M C Bank was in bad faith.

CONCLUSION
For the foregoing reasons, we find that the pleadings do not set forth a cause of action. Thus, the judgment of the trial court, sustaining the second peremptory exception pleading the objection of no cause of action and dismissing plaintiffs' claims, is affirmed. Costs of this appeal are assessed to plaintiffs.
AFFIRMED.
GUIDRY and FITZSIMMONS, JJ., concur.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Paul Debaillon was substituted as a party plaintiff on behalf of Avery J. Domangue because he was appointed trustee of the debtor in bankruptcy proceedings filed by Avery J. Domangue.
[3] The documents evidencing the Receivable Line were attached as Exhibit "1" to the Supplemental and Amended Petition.
[4] The documents evidencing the promissory note and security interest are attached as Exhibit "2" to the Supplemental and Amended Petition.
[5] La. R.S. 6:1124 was added by Act 581 § 1 in 1991.