757 So.2d 23 (1999)
DIAMOND SERVICES CORPORATION, Plaintiff-Appellant,
v.
Delores N. BENOIT, Defendant-Appellee.
No. 99-765.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1999.
Rehearing Denied January 20, 2000.
Writ Granted April 20, 2000.
*24 P. J. LaBorde, Jr., Lake Charles, for Diamond Services Corp.
Christopher Alan Edwards, Lafayette, for Dolores N. Benoit.
John Franklin Craton, Crowley, for McBank & Trust Co.
BEFORE: YELVERTON, SAUNDERS, and GREMILLION, Judges.
SAUNDERS, Judge.
On May 7, 1993, Delores Navarre Benoit (Defendant) executed several documents to complete two collateral mortgage packages. The first collateral mortgage (MC Mortgage) was in favor of Morgan City Bank and Trust Company (MC Bank). The second collateral mortgage (Diamond Services Mortgage) was in favor of Diamond Services. Defendant signed the act of collateral mortgages and the collateral mortgage notes. However, Defendant did not sign the hand notes. Both mortgages were secured by a 410.92 acre tract in Acadia Parish owned by Defendant.
Later, MC Bank assigned all rights in the MC Mortgage to Diamond Services. Thus, Diamond Services held both the MC Mortgage and the Diamond Services Mortgage. The property securing both mortgages was sold but the proceeds failed to satisfy the debt. Hence, Diamond Services sued Defendant for the deficiency and filed a motion for summary judgment. Defendant responded to the motion by filing a motion for summary judgment and a reconventional demand alleging fraud and mutual error. The trial court dismissed Defendant's reconventional demand but sustained Defendant's motion for summary judgment. Both Diamond Services and Defendant appealed to this court. We find that the trial court did not err in admitting parole evidence and finding mutual error as to the MC Mortgage.
Considering the applicable jurisprudence, Diamond Services, as a matter of law, is entitled to summary judgment and Defendant is personally liable for the amount due on the collateral mortgage note executed in favor of Diamond Services. We also reinstate Defendant's reconventional demand.

*25 FACTS

On May 7, 1993, William Davenport (Davenport) signed two hand notes in favor of MC Bank and Diamond Services. Both hand notes extended a line of credit to International Diving & Consulting, Inc., (International Diving), a corporation incorporated by Davenport. To secure the hand notes, Davenport convinced Defendant to execute two collateral mortgages.
The first mortgage was in favor of MC Bank. The MC Mortgage package consisted of a collateral mortgage note for MC Bank for $350,000.00, a mortgage on Defendant's 410.92 acre tract in Acadia Parish, and a pledge of a collateral mortgage note. The second mortgage was in favor of Diamond Services. The Diamond Services Mortgage package consisted of a collateral mortgage note in favor of Diamond Services for $300,000.00, a mortgage on the same 410.92 acre tract in Acadia Parish, and a security agreement. In the same setting, Davenport signed a hand note in favor of MC Bank and a hand note in favor of Diamond Services on behalf of International Diving. Davenport also signed as guarantor on both hand notes but Defendant did not sign the hand notes.
In November 1994, the note in favor of MC Bank was put into default. MC Bank seized and sold certain collateral owned by International Diving and recovered only $192,734.00. Shortly thereafter, International Diving filed for Chapter 11 Bankruptcy Protection. In December 1996, MC Bank filed for executory process attempting to seize and sell the 410.92 acres pledged by Defendant. However, in May 1997, MC Bank assigned all rights in the MC Mortgage to Diamond Services. The following month, Diamond Services was substituted as party plaintiff in the executory process proceedings.
The pledged property was sold in October 1997 and the balance applied to the outstanding balance was $116,157.28. Since this amount failed to cover the balance, Diamond Services filed a petition for deficiency judgment on the MC Mortgage note and filed a separate suit on the Diamond Services promissory note. Defendant answered the petitions. In Defendant's answer, she denied personal liability and asserted several affirmative defenses including: error or mistake, failure of consideration, and fraud. Moreover, Defendant filed a reconventional demand against Diamond Services and MC Bank. The trial court dismissed Defendant's reconventional demand.
Both Diamond Services and Defendant filed Motions for Summary Judgment. The trial court sustained Defendant's motion and dismissed Diamond Services motion. Diamond Services and Defendant appeal to this court.

LAW AND ANALYSIS

I. Parole Evidence and Vices of Consent:
The first and second assignments of error are that the trial court erred as a matter of law in receiving parole evidence in ascertaining the intent of the parties which modified the written credit agreement. The Defendant alleges that during the closing, Gerald Listi (Listi), a senior commercial loan officer for MC Bank, assured her that she was not personally liable for the debt. Listi, in his deposition, confirmed Defendant's allegations. The trial court accepted Listi's testimony and limited Defendant's liability on both mortgages because of mutual error.
La.Civ.Code art. 1848 sets forth the standard for allowing parole evidence to alter the contents of a written document and states that:
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified *26 by a subsequent and valid oral agreement.
Defendant asserts that parole evidence should be allowed because there were several vices of consent. The trial court, in its judgment, stated that there "was mutual error on all parties, and that the intent and understanding by all when the documents were signed was that Mrs. Benoit would not be personally responsible for the debts evidenced by the collateral packages...."
A determination of mutual error is mainly a question of fact. Thus, we are bound to grant broad discretion to the trial court's finding and cannot disturb it on appeal unless it is clearly wrong. Teche Realty Inv. Co. v. Morrow, 95-1473 (La. App. 3 Cir. 4/17/96); 673 So.2d 1145. La. Civ.Code art.1949 states that "[e]rror vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." The jurisprudence has interpreted this article and allows recovery only when both parties are in error, i.e., mutual error/mistake. La.Civ.Code art. 1949 comment (d) states that: "[T]he granting of relief for error presents no problem when both parties are in error, that is, when the error is bilateral. When that is the case the contract may be rescinded as when the parties misunderstood each other at the time of contracting."
The case of Succession of Jones v. Jones, 486 So.2d 1124, 1127 (La.App. 2 Cir.), writ denied, 489 So.2d 249 (La.1986), (citations omitted), (emphasis added), describes a mutual error/mistake by stating:
A mutual mistake is a mistake shared by both parties to the instrument at the time of reducing their agreement to writing, and the mistake is mutual if the contract has been written in terms which violate the understanding of both parties; that is, if it appears that both have done what neither intended. The evidence of mutuality must relate to the time of the execution of the instrument and show that the parties then intended to say one thing and by mistake expressed another and different thing.
At this point we will discuss each mortgage separately and apply the above concepts.

MC Mortgage
The issue is whether the written terms of the MC Mortgage violate the understanding of the parties. The written terms of the collateral mortgage note states that the Defendant is unconditionally bound for the debt. When Defendant signed the MC Mortgage, she did not intend to be personally liable. Listi, a senior commercial loan officer for MC Bank, in his deposition stated that he assured Defendant that she would not be held personally liable for the debt. Moreover, Listi stated that when MC Bank anticipates personal liability, they require the party to sign the hand note or a personal guaranty. In the instant case, Defendant signed neither. Thus, MC Bank did not intend to hold Defendant personally liable for the debt. Considering the intentions of the Defendant and MC Bank and the language of the note, there was mutual error as to the MC Mortgage.
Although there was evidence of mutual error and parole evidence was admissible, we find that the trial court failed to determine if the defense of mutual error is permitted against Diamond Services, a possible holder in due course. According to La.R.S. 10:3-302, a holder of a note is a holder in due course if:
(2) the holder took the instrument (I) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any to the instrument described *27 in R.S. 10:3-306, and (vi) without notice that any party has a defense or claim in recoupment described in R.S. 10:3-305(a).
As such, if Diamond Services is a holder in due course, the defense of mutual error as to the MC Mortgage note would be without merit. See La.R.S. 10:3-305. Thus, we remand this case to the trial court to determine Diamond Services' status as a holder in due course.

Diamond Services Mortgage
Defendant also alleges error as to the Diamond Services Mortgage. As noted above, parole evidence may be admitted to prove mutual error. The trial court ruled that there was mutual error concerning the Diamond Services Mortgage.
The issue is whether the written terms of the Diamond Services Mortgage note violate the understanding of the parties. The language of the collateral mortgage note states that Defendant is unconditionally bound. However, Defendant did not anticipate personal liability for the $300,000.00 note. Diamond Services intended to obtain the "maximum coverage" and asserted that their intentions were to hold Defendant personally liable for the debt. Diamond Services' intentions and the terms of the collateral mortgage note are indistinguishable. Thus, the error concerning the Diamond Services Mortgage is unilateral and cannot be rescinded on the basis of mutual error.
Considering the above reasons, the trial court did not err in permitting parole evidence, but did err in rescinding the Diamond Services Mortgage on the basis of mutual error.

II. Summary Judgment:
The third assignment of error is that the trial court erred as a matter of law in denying Plaintiffs Motion for Summary Judgment when Defendant agreed, under express terms of the mortgage, to be personally liable. A party is entitled to summary judgment where the pleadings, depositions, answers to interrogatories and admissions, together with affidavits, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. See La.Code Civ.P. art. 966; Haywood v. Sugar Cane Prods., 96-1151 (La.App. 3 Cir. 3/5/97); 692 So.2d 524. The jurisprudence has consistently held that appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether a summary judgment is appropriate. Potter v. First Fed. Sav. and Loan Ass'n of Scotlandville, 615 So.2d 318 (La.1993); Schroeder v. Board of Supervisors of Louisiana State Univ., 591 So.2d 342 (La.1991).
In the case sub judice, Defendant signed collateral mortgage notes in favor of MC Bank and Diamond Services, but she did not sign the hand notes evidencing the debt. Thus, Defendant asserts that she is not personally liable. Due to the above stated reasoning concerning the MC Mortgage, we will only discuss summary judgment pertaining to the Diamond Service Mortgage.
This circuit has been consistent in holding that a third party maker of a collateral mortgage note, pledged to secure the indebtedness of another, will be held personally liable. See Merchants and Farmers Bank & Trust v. Smith, 559 So.2d 845 (La.App. 3 Cir.), writ denied, 563 So.2d 865 (La.1990); Concordia Bank & Trust Co. v. Lowry, 533 So.2d 170 (La. App. 3 Cir.1988), writ granted in part and reversed in part, 539 So.2d 46 (La.1989). For example in Concordia Bank & Trust Company, this court stated that:
However, while it is established that the hand note is the debt instrument in a collateral mortgage arrangement, it is equally clear that the maker of the collateral mortgage note is personally liable thereon. A collateral mortgage note, such as the one signed by appellants in the instant case, is a negotiable instrument. The mere fact that it is paraphed for identification with a collateral *28 mortgage does not alter its nature or effect. Accordingly, the collateral mortgage note creates a personal obligation for which the maker is liable. It therefore follows that even though the debt is incurred in connection with a hand note in a collateral mortgage arrangement, the maker of the collateral mortgage note is personally liable for the indebtedness owed. However, such personal liability is limited to the lesser of the face amount of the collateral mortgage note and the amount owed in connection with the hand note.
Id. at 172-173 (footnote omitted) (emphasis added).
The collateral mortgage note signed only by the Defendant states:
The maker(s) of this Note and all endorsers, guarantors, and sureties ... hereby binding themselves jointly, severally and solidarily, unconditionally and as original promisors, for the payment hereof, in principal, interest, costs and attorney's fees. Furthermore, no discharge or release of any collateral securing this Note or any delay on the part of the holder hereof in exercising any rights hereunder shall operate as a waiver of such rights, or to otherwise diminish or release such collateral.
In order to create in rem liability only, additional steps must be taken. In Bank of Lafayette v. Bailey, 531 So.2d 294 (La. App. 3 Cir.), writ granted in part and rendered, 533 So.2d 5 (La.1988), the supreme court limited liability to the mortgaged property because the bank's printed collateral mortgage form stated that, it "does not create any liability with regard to the separate property of spouse intervenor." In the instant case, there was no language discharging Defendant from personal liability.
Considering the applicable jurisprudence and the language found in the collateral mortgage note, we reverse the trial court's judgment sustaining Defendant's motion for summary judgment. Moreover, we sustain Diamond Services motion for summary judgment and hold that, as a matter of law, Defendant is personally liable for the debt owed on the Diamond Services Mortgage note.

III. Reconventional Demand:
The Defendant asserts that the trial judge erred in dismissing her reconventional demand and requests that this court reinstate her right of action. In her reconventional demand, Defendant alleges that Diamond Services improperly prepared and fraudulently enforced documents which it knew were invalid. The trial court dismissed Defendant's reconventional demand on the basis of La.R.S. 6:1121-6:1124.
According to La.R.S. 6:1121, a credit agreement is "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation." La.R.S. 6:1122 states that, "A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."
According to Whitney National Bank v. Rockwell, 94-3049 (La.10/16/95); 661 So.2d 1325, the Louisiana Supreme Court, noting the importance of the banking statutes, refused to adopt a "blanket rule" prohibiting all actions on credit agreements unless the agreement is in writing. In Whitney, the supreme court stated that "[t]he Louisiana statute does not address, one way or the other, any protection of unsophisticated borrowers or any exemption based on fraud, misrepresentation, promissory estoppel or other equitable theory." Id. at 1331. Furthermore, in a footnote, the supreme court explicitly states "[w]e decline at this time to adopt a blanket rule, as the Second Circuit recently did in holding that the credit agreement statute precludes all actions for damages arising from oral credit agreements, regardless of the theory of recovery asserted." Id. at 1332, n. 6 (emphasis *29 in original.) We agree with the supreme court on this issue. Adopting a "blanket rule" precluding actions under all circumstances would allow creditors to freely defraud unsophisticated borrowers and rely on the law in perpetuating that fraud.
In the instant case, Defendant alleges fraud on the part of Diamond Services. The determination of fraud is a factual question and should be determined by the trial court. Minor v. Robertson, 461 So.2d 509 (La.App. 3 Cir.1984), writ denied, 464 So.2d 1384 (La.1985). La.Civ. Code art. 1953 describes fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." The burden of proof in fraud cases is provided for in La.Civ.Code art. 1957 as follows: "Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence."
Considering the language in Whitney and the facts of the instant case, we reinstate Defendant's reconventional demand and remand this case to the trial court to determine whether Diamond Services committed fraud.

DECREE
For the foregoing reasons, we conclude that Diamond Services is entitled to summary judgment as a matter of law on the Diamond Services Mortgage. We remand this case to the trial court to determine the amount owed on the Diamond Services Mortgage and to determine Diamond Services' status as a holder in due course on the MC Bank collateral mortgage note. Further, we reverse the trial court's denial of Defendant's reconventional demand and remand for further proceedings on the reconventional demand.
All cost of the trial court proceeding and appeal are assessed equally to the plaintiff, Diamond Services, and Defendant, Delores N. Benoit.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.