762 So.2d 1243 (2000)
Anne GUZZARDO-KNIGHT, Leonard Knight & N. Guzzardo Company, Inc. d/b/a Louisiana Steelworks
v.
CENTRAL PROGRESSIVE BANK, Adams and Reese, a Registered Limited Liability Partnership & ABC Insurance Company.
Nos. 99 CA 1449, 99 CW 1278.
Court of Appeal of Louisiana, First Circuit.
June 23, 2000.
*1244 L. Jerome Stanley, Baton Rouge, for Appellants Plaintiffs Anne Guzzardo-Knight, Leonard Knight & N. Guzzardo Company, Inc. d/b/a Louisiana Steelworks.
Brett Furr, Baton Rouge, for Appellee Defendant Central Progressive Bank.
Before: FOIL, WHIPPLE and GUIDRY, JJ.
FOIL, Judge.
In this writ application and appeal, we are asked to address the propriety of a trial judge's rulings denying an exception of no cause of action and granting of an exception of prescription. At issue on the exception of no cause of action is whether causes of action for fraud, negligent misrepresentation, and detrimental reliance, which arise out of a lender's alleged oral promise to loan money, are precluded by the writing requirement contained in the Louisiana Credit Agreement Statute, La. R.S. 6:1122. We hold that La. R.S. 6:1122 precludes plaintiffs from recovering damages against the lender under the asserted causes of action that are all based on the existence of an oral credit agreement, and we sustain the exception of no cause of action.

BACKGROUND
On April 29, 1998, plaintiffs, Anne Guzzardo-Knight, Leonard Knight and N. Guzzardo Company, Inc. d/b/a Louisiana Steelworks, filed this lender liability suit against Central Progressive Bank (Bank) seeking to recover damages arising out of the Bank's alleged breach of an oral promise to lend them money. In their petition, plaintiffs averred that the Bank agreed to loan them $1,250,000.00 to operate a steel mill if they agreed to purchase and assume the mortgage on a steel mill in which the Bank held a security interest. Plaintiffs alleged the Bank represented it would loan the required operating capital to Louisiana Steelworks with a guarantee from the Farmers Home Mortgage Administration (FHMA), and further represented the FHMA guarantee would be forthcoming based on the Bank's experience in evaluating and securing FHMA guarantees. Based on these representations, plaintiffs purchased the mill and invested approximately $700,000.00 getting the mill ready for operation.
Plaintiffs averred that during each step of the acquisition of the mill, the Bank continually reassured them FHMA would approve the guarantee of the loan and the Bank would fund the loan. They submitted that "[a]n oral credit agreement" between Louisiana Steelworks and the Bank was created by the actions of the parties. Although they alleged a written commitment letter existed, plaintiffs admitted it was not signed.
In 1995, the Bank president with whom plaintiffs did business resigned from the Bank. His successor informed plaintiffs in May of 1995 that the Bank was not going to make the operating loan, and they were told the Bank never intended to make the loan.
*1245 In this lawsuit filed in 1998, plaintiffs are seeking to recover damages based on the Bank's failure to loan them operating capital. In their petition, plaintiffs attempted to set forth four causes of action under the legal theories of contractual fraud, delictual fraud, negligent misrepresentation and detrimental reliance. All four causes of action arise out of the alleged oral agreement to loan them operating capital. With respect to each cause of action, plaintiffs averred that the Bank made three central misrepresentations: (1) the Bank would fund the loan; (2) FHMA would guarantee the loan and (3) the Bank had experience evaluating and making loans with FHMA guarantees when it in fact had no experience making FHMA loans. These misrepresentations, plaintiffs alleged, enticed and induced them to purchase the mill and make substantial investments to get the mill operational and caused them to suffer substantial economic damages as a result.
Plaintiffs also sued the law firm of Adams and Reese, whom they hired to provide them with advice regarding the Bank's commitment to make the operating loan, alleging a malpractice cause of action. At the heart of their malpractice action is the claim that their attorneys did not advise them of the necessity of obtaining a signed, written credit agreement with the Bank in accordance with the provisions of the Louisiana Credit Agreement Statute. La. R.S. 6:1122.
The Bank filed a peremptory exception, asserting an exception of no cause of action and an exception of prescription. With respect to the exception of no cause of action, the Bank relied on La. R.S. 6:1122, which bars an action by a debtor on a credit agreement unless the credit agreement is in writing. The Bank argued that plaintiffs' causes of action for fraud, negligent misrepresentation and detrimental reliance were based on the alleged oral agreement to extend credit and were prohibited because of the failure to satisfy the writing requirement of R.S. 6:1122. The Bank further argued that even if any of plaintiffs' causes of action fell outside the scope of the writing requirement, they were prescribed, positing they were delictual in nature and thus governed by the one-year prescriptive period applicable to tort actions. The prescription exception was based on plaintiffs' admission they knew in May of 1995 the Bank would not give them a loan and met soon thereafter with their lawyers to discuss the possibility of filing suit against the Bank for refusing to loan them operating capital. However, plaintiffs did not file this lawsuit until April of 1998, nearly three years after their cause of action arose.
The trial judge denied the exception of no cause of action, finding that plaintiffs' claims for fraud, negligent misrepresentation and detrimental reliance fell outside the scope of the Louisiana Credit Agreement Statute. The judge found, however, that all of these causes of action were grounded in tort, rather than contract, and therefore were subject to the one-year prescriptive period. As the suit was filed well over a year after plaintiffs were denied the loan, the judge granted the exception of prescription, dismissing plaintiffs' claims against Central Progressive Bank.[1]
This appeal, taken by plaintiffs, followed. The Bank filed a writ application with this court, challenging the judge's denial of its exception of no cause of action. This court ordered the writ application to be considered in this appeal. For the reasons which follow, we grant the writ application, sustain the Bank's exception of no cause of action, and pretermit discussion of the trial judge's prescription ruling.

NO CAUSE OF ACTION
The peremptory exception of no cause of action is a procedural device used to test whether, under the allegations of the petition, the law affords any remedy for the grievance asserted. Ultra Fabricators, *1246 Inc. v. M C Bank and Trust Company, 97-1947, p. 4 (La.App. 1 Cir. 9/25/98), 724 So.2d 210, 212, writ denied, 98-2682 (La.12/18/98), 732 So.2d 1238. The exception is triable on the face of the petition and all well-pleaded allegations of fact must be accepted as true. A court should sustain the exception only if the law affords no remedy under any evidence that is admissible under the pleadings. Id. Because the no cause of action exception presents a question of law based on the sufficiency of the petition, this court reviews the trial court's ruling on the exception de novo. City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253.
The issue in this writ application is whether Louisiana law allows a plaintiff to recover damages from a lender based on an oral agreement by the Bank to lend money. Plaintiffs insist their claims for fraud, detrimental reliance and negligent misrepresentation fall outside the scope of the Louisiana Credit Agreement Statute and are not barred by its provisions. We disagree.
In Whitney National Bank v. Rockwell, 94-3049 (La.10/16/95), 661 So.2d 1325, the Louisiana Supreme Court observed that credit agreement statutes represent a legislative reaction to the recent surge in lender liability litigation. These statutes were enacted primarily to limit the most common lender liability claimsthose involving, among other things, assertions of breach of oral agreements to lend money, by requiring a writing as a prerequisite for a debtor to sue a lender and thus precluding debtors from bringing claims based on oral agreements. Id., p. 7, 661 So.2d at 1330.
The Louisiana Credit Agreement Statute, La. R.S. 6:1121-1123, provides a statute of frauds in actions based on credit agreements as defined in that statute. Ultra Fabricators, Inc. v. M C Band and Trust Co., 97-1947 at p. 5, 724 So.2d at 213. The promise to loan operating capital to plaintiffs is clearly a "credit agreement" as defined by La. R.S. 6:1121, which encompasses "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation."
La. R.S. 6:1122 provides that "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." The statute thus precludes an action based on a credit agreement unless that agreement is in writing. Although the statute does not list those types of actions that are barred by its writing requirement, two recent cases have held that the statute bars claims for damages against a lender based on an alleged oral credit agreement regardless of the theory of recovery asserted. Fleming Irrigation, Inc. v. Pioneer Bank & Trust Co., 27,262 (La.App. 2 Cir. 8/23/95), 661 So.2d 1035, writ denied, 95-2357 (La.12/8/95), 664 So.2d 427 (discussed infra); Bonvillain v. United States, 1999 WL 1072539 (E.D.La.11/24/99) (wherein a federal district court, relying on Fleming, held that the plaintiffs' claim against a Bank arising out of an alleged oral agreement to loan them money, based on an alleged conspiracy to deprive them of their property without due process of law, was barred by the Louisiana Credit Agreement Statute.)
In Fleming, a lender liability action was brought against a bank seeking damages based on an alleged oral agreement to loan money. The plaintiffs claimed the Louisiana Credit Agreement Statute merely precluded causes of action based on breach of contract, and did not bar recovery under alternative theories such as fraudulent or tortious misrepresentation, negligence, promissory estoppel, or detrimental reliance. The Second Circuit disagreed, stressing that each of the plaintiffs' alternative theories relied upon the alleged verbal promises. The court reasoned that to allow recovery on bases other than breach *1247 of contract would "simply provide an easy avenue for resourceful attorneys to circumvent the statute," and would defeat the legislature's intent to bar claims against a lender for damages based on oral representations.[2]
We agree with the Fleming decision. In this case, central to all of plaintiffs' theories of liability is the alleged failure of the Bank to honor its oral promise to loan them money. It is that breach which gave rise to the causes of action for fraud, negligent misrepresentation and detrimental reliance. By enacting La. R.S. 6:1122, the legislature intended to bar liability suits against lenders involving assertions of a breach of oral agreements to lend money. To allow a plaintiff to recover damages based on legal theories other than breach of contract, where the breach of the financial institution's oral promise to lend money forms the very basis of those alternate legal theories, would render the statute meaningless. Therefore, we hold plaintiffs' causes of action for fraud, negligent misrepresentation and detrimental reliance, which arise out of an oral credit agreement, are barred by La. R.S. 6:1122.

CONCLUSION
Based on the foregoing, we sustain the exception of no cause of action. La.Code Civ. P. art. 934 provides that when the grounds of the objection cannot be removed by amending the pleading, the action shall be dismissed. Because we have concluded that the plaintiffs in this case do not have a cause of action against the defendant bank for damages arising out of an oral credit agreement regardless of the legal theory asserted, and because plaintiffs have based their lawsuit on the existence of an alleged oral credit agreement, the grounds of the objection cannot be removed by amending the petition. Therefore, in accordance with La.Code Civ. P. art. 934, we enter judgment in favor of Central Progressive Bank, dismissing plaintiff's claims against this defendant. This case is remanded to the trial court to conduct proceedings not inconsistent with this opinion. All costs of this appeal are assessed to appellants.
WRIT GRANTED, EXCEPTION OF NO CAUSE OF ACTION SUSTAINED, CLAIMS AGAINST CENTRAL PROGRESSIVE BANK DISMISSED AND REMANDED.
NOTES
[1] The judgment reserved plaintiffs' claims against defendant Adams & Reese.
[2] In a footnote in Whitney National Bank v. Rockwell, 94-3049 at p. 13, 661 So.2d at 1332, the Louisiana Supreme Court declined at that time to adopt Fleming's blanket rule, confining its holding to the issue before the court, which involved a defense to payment asserted by a borrower which was based on an alleged oral credit agreement. The court held La. R.S. 6:1122 barred the defense. Cf. Diamond Services Corporation, 99-765, p. 9 (La.App. 3 Cir. 12/8/99), 757 So.2d 23, writ granted, XXXX-XXXX (La.4/20/2000), 759 So.2d 768 wherein an appellate court recently held that La. R.S. 6:1122 did not bar a borrower from asserting fraud as a defense to payment in a reconventional demand.