852 So.2d 1221 (2003)
Freddy FORTENBERRY, et ux., Plaintiffs-Appellants,
v.
HIBERNIA NATIONAL BANK, et al., Defendants-Appellees.
No. 37,266-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 2003.
*1223 J. Michael Hart, Monroe, for Appellants.
Rankin, Yeldell & Katz, by Stephen J. Katz, for Appellees.
Before GASKINS, CARAWAY and PEATROSS, JJ.
GASKINS, J.
This matter arises from a dispute over an alleged promise to make a crop loan. The plaintiffs, Freddy and Tommye Fortenberry, appeal a trial court judgment sustaining an exception of no cause of action in favor of the defendants, Hibernia National Bank and Priss Bryant. For the following reasons, we affirm the trial court judgment, and remand for further proceedings.

FACTS
Freddy Fortenberry is a farmer in the Lake Providence area who had a business relationship with Hibernia National Bank (Bank). He had a crop loan from Hibernia in 2001. In December 2001, he began discussing a crop loan for 2002 with a Bank employee, Priss Bryant. According to the plaintiffs, in January and February 2002, Ms. Bryant told them that the loan had been approved. Mr. Fortenberry contacted Ms. Bryant, seeking funds from the 2002 crop loan to make rental payments on land he farmed. He alleged that she made a personal loan to him of $38,000 to pay the rent, and then instructed him to use other government funds in violation of the purpose for which that money was issued. He claimed that Ms. Bryant told him to use the funds for expenses necessary to the 2002 crop. Mr. Fortenberry asserted that Ms. Bryant then arbitrarily reduced the projected production from his wheat crop below the parish average, which ensured that the 2002 crop loan would not be approved. He also charged that Ms. Bryant froze his account with the Bank.
The plaintiffs filed suit on March 20, 2002, against the Bank and Ms. Bryant, claiming that the Bank's misrepresentations prevented him from farming in 2002 and effectively prevented him from procuring financing from other lending institutions. The plaintiffs sought damages, claiming that they were damaged by the Bank's failure to fund the 2002 crop loan, its false representations about the approval of the loan, failure to properly present the loan for approval, negligent and careless supervision of Bank loan officers and failure to adhere to guidelines to timely comply with loan processing. They alleged a bad faith breach of contract by the Bank in refusing to fund the 2002 crop loan. The plaintiffs also claimed that Ms. Bryant deliberately intended to cause them harm. They asserted that they relied to their detriment on the promises made to them by the Bank and Ms. Bryant. They urged that Ms. Bryant made false representations when she knew or should have known that the refusal to honor the representations about the 2002 crop loan would create a situation where other lending institutions would have extended all available farm loan credit limits for 2002.
On April 8, 2002, the defendants filed an exception of no cause of action. They asserted that this matter is governed by the Louisiana Credit Agreement Statute contained in La. R.S. 6:1121-1124. Those provisions specify that credit agreements must be in writing. According to the defendants, the plaintiffs never alleged that the credit agreement for the 2002 crop loan was in writing. They asserted that a debtor may not maintain an action on a credit *1224 agreement unless the agreement was in writing and was signed by the debtor and the creditor. They claimed that such an agreement was not binding on a financial institution unless it was in writing.
The plaintiffs amended their petition on June 12, 2002, claiming that the loan from Ms. Bryant to Mr. Fortenberry was done to conceal an advance on the 2002 crop loan. The plaintiffs alleged that Ms. Bryant had commented that she intentionally planned to harm Mr. Fortenberry. The plaintiffs claimed that the Bank had a pattern of gross negligence or intentional negligence in handling loan applications to the detriment of area farmers. The plaintiffs claimed that the defendants committed fraudulent conduct in making gross misrepresentations to Mr. Fortenberry and then informing other lending institutions that the Bank intended to make a crop loan to him.
The plaintiffs further asserted that the Bank violated the terms and conditions of a five-year Agricultural Security Agreement between Mr. Fortenberry and the United States Department of Agriculture, through the Bank. The plaintiffs claimed that the Bank negligently gave authority to Ms. Bryant to make statements to customers regarding the approval of loans.
On July 5, 2002, the defendants responded, reiterating their exception of no cause of action and asserting exceptions of no right of action and vagueness as well as a motion to strike the plaintiffs' demand for a jury trial. The defendants indicated that the matter should be disposed of on the exception of no cause of action, but contended that the plaintiffs had no right of action to object to the Bank's procedures regarding other area farmers. In addition to their claim of vagueness as to the plaintiffs' pleadings, the Bank asserted that the plaintiffs waived their right to a jury trial in promissory notes previously executed between the parties.
On October 31, 2002, the plaintiffs again filed a supplemental and amending petition, claiming that the Bank and Ms. Bryant committed acts of fraud through concealment, suppression of the truth and misrepresentations to the plaintiffs. They asserted that the Bank failed to inform them that Ms. Bryant had no authority to approve the loan, and that the Bank should have told them that they were not going to receive a crop loan for 2002. The plaintiffs additionally urged that Mr. Fortenberry suffered a stroke as a result of the stressful situation created by the defendants and that the defendants knew or should have known that their actions would cause Mr. Fortenberry to have a stroke. The plaintiffs claimed damages for Mr. Fortenberry's severe emotional and physical injuries.
The exceptions were argued on November 6, 2002. In a judgment filed November 18, 2002, the trial court sustained the exception of no cause of action, dismissing the plaintiffs' claims with prejudice, at their costs. Because the exception of no cause of action was sustained, the trial court made no ruling on the other exceptions and the motion to strike jury trial. The plaintiffs devolutively appealed the ruling.
The plaintiffs assert that the trial court erred in failing to find that there was a written agreement in this matter, in applying an erroneous interpretation of La. R.S. 6:1122, and in dismissing Ms. Bryant in spite of specific allegations of her intentional conduct.

WRITTEN AGREEMENT
The plaintiffs argue that the loan agreement between Mr. Fortenberry and Ms. Bryant satisfies the requirement that the agreement be in writing. They assert that this document was executed on March 1, *1225 2002, and four days later, a charge was made against Ms. Bryant's certificate of deposit. They claim that this was a subterfuge to disguise the fact that the Bank actually issued money under the 2002 crop loan.
The purpose of the peremptory exception of no cause of action is to determine the sufficiency in law of the petition. La. C.C.P. art. 927. It questions whether the law provides a remedy to the plaintiff against the defendant for the complaints set forth in the petition. Hall v. Zen-Noh Grain Corporation, XXXX-XXXX (La.4/27/01), 787 So.2d 280; Robertson v. Caddo Parish, La., 36,540 (La.App.2d Cir.12/11/02), 833 So.2d 1139. All well-pleaded allegations must be assumed as true, and any doubt is to be resolved in favor of the petition. In reviewing a trial court's ruling sustaining an exception of no cause of action, the reviewing court should subject the case to de novo review because the exception raises a question of law and the lower court's decision is based solely upon the sufficiency of the petition. Robertson v. Caddo Parish, La., supra.
Resolution of the issues raised in this case rests upon an interpretation of the Louisiana Credit Agreement Statute (LCAS) contained in La. R.S. 6:1121-1124. Those provisions are as follows:
La. R.S. 6:1121
For purposes of this Chapter, the following terms shall have the following meanings:
(1) "Credit agreement" means an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation.
(2) "Creditor" means a financial institution or any other type of creditor that extends credit or extends a financial accommodation under a credit agreement with a debtor.
(3) "Debtor" means a person or entity that obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor.
(4) "Financial institution" means a bank, savings and loan association, savings banks, or credit union authorized to transact business in this state.
La. R.S. 6:1122
A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.
La. R.S. 6:1123
The following actions shall not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements of R.S. 6:1122:
(1) The rendering of financial or other advice by a creditor to a debtor.
(2) The consultation by a creditor with a debtor.
(3) The agreement of a creditor to take or not to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under a prior credit agreement, or extending installments due under a prior credit agreement.
B. A credit agreement shall not be implied from the relationship, fiduciary, or otherwise, of the creditor and the debtor.
La. R.S. 6:1124
No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution *1226 specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof. Any claim for breach of a fiduciary responsibility of a financial institution or any officer or employee thereof may only be asserted within one year of the first occurrence thereof. This Section is not limited to credit agreements and shall apply to all types of relationships to which a financial institution may be a party.
The crop loan at issue here meets the definition of a credit agreement in La. R.S. 6:1121. Under La. R.S. 6:1122, the defendant cannot maintain an action on an oral credit agreement. The plaintiffs assert that the $38,000 loan from Ms. Bryant was a disguised advance on the 2002 crop loan. According to the plaintiffs, that agreement between Mr. Fortenberry and Ms. Bryant, which is in writing, meets the requirements of La. R.S. 6:1122. We disagree.
In this matter, the loan agreement with Ms. Bryant bears her signature and that of Mr. Fortenberry. There were two witnesses to their signatures, but the document was not notarized. The document sets forth the following:

REPAYMENT AGREEMENT
March 1, 2002
I, Freddy Fortenberry, do agree to pay Priss Bryant $38,000.00 when:
(1) I close my 2002 crop production loan Or
(2) from current wheat crop of 760 acres, planted 11-01 and expected to be harvested in May 2002,
Whichever should come first.
This is not a suit to effectuate the loan of $38,000 set forth in this document. The $38,000 was paid to Mr. Fortenberry and this document specifies when it is to be repaid. Nothing in it obligates the Bank or Ms. Bryant to extend further credit, which is the complaint of the plaintiffs. We reject the plaintiffs' argument that this writing satisfies the statutory requirement of a written credit agreement between the plaintiffs and the Bank for the 2002 farm loan.

INTERPRETATION OF LOUISIANA CREDIT AGREEMENT STATUTE
The plaintiffs urge that the trial court erroneously interpreted La. R.S. 6:1122 to exclude all causes of action arising from loans from lending institutions without a written agreement, including claims of fraud.
In Fleming Irrigation, Inc. v. Pioneer Bank & Trust Company, 27,262 (La. App.2d Cir.8/23/95), 661 So.2d 1035, writ denied, 95-2357 (La.12/8/95), 664 So.2d 427, this court considered whether La. R.S. 6:1121-1124 preclude the assertion of alternative legal theories in lender liability actions. In that matter, the plaintiff contended that the defendant bank made oral promises to fund a loan once a Small Business Administration guaranty was finalized. The plaintiff argued that he relied upon that promise and then the loan was refused.
It was urged that the LCAS merely precluded causes of action based upon breach of contract, while not affecting recovery under theories such as fraudulent or tortious misrepresentation, negligence, promissory estoppel, or detrimental reliance. After examining jurisprudence from other states with a similar statutory scheme regarding credit agreements, we concluded that the LCAS precluded all *1227 actions for damages arising from oral promises to lend money, even when predicated on different theories of recovery.
In Fleming, this court observed that each legal theory asserted by the plaintiff relied upon the alleged verbal assertions of the defendant bank. We reasoned that accepting such allegations as affording recovery, grounded in concepts other than breach of contract, would provide an easy avenue for resourceful attorneys to circumvent the statute, thus defeating the legislative intent to prohibit claims stemming from hard-to-defend oral representations. We noted that the Louisiana legislation was intended to prevent "end runs" around the statute's limitations.
In Whitney National Bank v. Rockwell, 94-3049 (La.10/16/95), 661 So.2d 1325, the defendant had executed a promissory note to the bank, but in response to the bank's efforts to collect, the defendant asserted that the bank breached an oral agreement to accept interest-only payments and then to grant a term of years for repayment in monthly installments. The supreme court refused to enforce the verbal agreement, finding that a writing was required under the LCAS. The court noted that the Louisiana statute does not address, one way or the other, any protection of unsophisticated borrowers or any exemption based on fraud, misrepresentation, promissory estoppel, or other equitable theory. In a footnote, the supreme court declined to adopt a blanket rule, as this court did in Fleming, holding that the credit agreement statute precludes all actions for damages arising from oral credit agreements regardless of the theory of recovery asserted.
In Guzzardo-Knight v. Central Progressive Bank, XXXX-XXXX (La.App. 1st Cir.6/23/00), 762 So.2d 1243, writ denied, 2000-2298 (La.6/15/01), 793 So.2d 208, the first circuit addressed the issue of whether causes of action for fraud, negligent misrepresentation, and detrimental reliance, arising from a lender's alleged oral promise to loan money, are precluded by the writing requirement contained in La. R.S. 6:1122. In sustaining an exception of no cause of action, the first circuit found that those causes of action were precluded by the statute.
The court reasoned that the LCAS provides a statute of frauds in actions based on credit agreements. The first circuit acknowledged Whitney National Bank v. Rockwell, supra, but noted that the Fleming Irrigation case and Bonvillain v. United States, (E.D.La.11/24/99), 1999 WL 1072539, held that La. R.S. 6:1122 bars claims for damages against a lender based on an alleged oral credit agreement, regardless of the theory of recovery asserted. The first circuit found that central to all of the plaintiff's theories of liability was the alleged failure of the bank to honor its oral promise to loan money. That breach gave rise to the causes of action for fraud, negligent misrepresentation, and detrimental reliance. The court reasoned that, in enacting La. R.S. 6:1122, the legislature intended to bar liability suits against lenders involving assertions of a breach of an oral agreement to lend money. To allow a plaintiff to recover damages based on legal theories other than breach of contract, where the breach of the financial institution's oral promise to lend money forms the very basis of those alternative legal theories, would render the statute meaningless.
In Jesco Construction Corporation v. Nationsbank Corporation, XXXX-XXXX (La.10/25/02), 830 So.2d 989, the Louisiana Supreme Court accepted the certified question from the United States Fifth Circuit Court of Appeals, as to whether the LCAS precludes all actions for damages arising from oral credit agreements, regardless *1228 of the legal theory of recovery. The supreme court answered the question in the affirmative.
According to the supreme court, Jesco Construction alleged in its petition breach of contract, detrimental reliance, negligent misrepresentation, unfair trade practices, breach of the duty of good faith and fair dealing, promissory and equitable estoppel, and breach of fiduciary duty. The court observed that the basis for each of those causes of action was the failure of the defendant to make a loan based upon an alleged oral credit agreement. The supreme court held that the LCAS precludes all actions for damages arising from oral credit agreements, regardless of the legal theory of recovery asserted.
The plaintiffs contend that Jesco is not applicable in this matter because there were no allegations of fraud in that case. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. La. C.C. art. 1953. In Jesco, the plaintiff alleged, among other theories of recovery, negligent misrepresentation, and breach of the duty of good faith and fair dealing. Although negligent misrepresentation (as opposed to intentional misrepresentation) may not technically constitute fraud, in his dissent in Jesco, Justice Calogero stated that the plaintiff had asserted fraud or misrepresentation as a theory of recovery. We find, as did the court in Jesco, that the causes of action articulated by plaintiffs have as their threshold the failure to make a loan based on an oral agreement, and consequently, fall under the prohibition of La. R.S. 6:1122.
The plaintiffs in the present case amended their petition to allege a personal injury cause of action, claiming that Mr. Fortenberry's stroke was a result of the stress caused by the Bank's failure to make the 2002 crop loan and that the Bank knew or should have known that its actions would result in the stroke. The actions complained of are all based on an alleged oral agreement to lend money. Such an agreement is not enforceable under the LCAS, and Jesco bars all causes of action for damages arising from an oral credit agreement, regardless of the theory of recovery.
Based upon the jurisprudence discussed above, we find that the LCAS precludes causes of action arising from oral credit agreements, regardless of the theory of recovery, including fraud. The LCAS makes a writing the sine qua non of asserting an action on a credit agreement. Because there is no such writing in the present case, the plaintiffs have no cause of action against the Bank arising from the alleged failure to grant a loan. The trial court correctly sustained the Bank's exception of no cause of action in that regard. However, as discussed below, the plaintiffs may be able to assert other causes of action against the Bank which are not grounded upon the failure to loan funds.

BANK OFFICER
The plaintiffs maintain that the trial court erred in dismissing the claims against Ms. Bryant in her individual capacity. They urge that Ms. Bryant voiced threats to deliberately harm them and assert that they were harmed by the failure to receive a crop loan. The plaintiffs also point to efforts to prevent them from obtaining financing from other lending institutions. They claim that they asserted a cause of action for intentional harm against Ms. Bryant.
The Bank points out that all actions by Ms. Bryant were done in the course and scope of her employment. While at one *1229 point the plaintiffs argue that she had apparent implied authority from the Bank to approve loans, the plaintiffs also contend that whether Ms. Bryant's actions were taken in the course and scope of her employment is irrelevant for the purposes of the exception of no cause of action.
In this matter, many of the actions by Ms. Bryant complained of by the plaintiffs arise out of the failure of the Bank to grant Mr. Fortenberry a crop loan. The nucleus of the complaint is the failure of the plaintiffs to receive the loan. Regardless of the way the plaintiffs attempt to frame their cause of action or state their theories of recovery, they still seek damages arising from an alleged oral agreement regarding a crop loan. The provisions of the LCAS preclude the recovery of damages even from a non-bank creditor based upon an oral credit agreement. Knight v. Magee, 2001-2041 (La.App. 1st Cir.9/27/02), 835 So.2d 636. To allow the plaintiffs in this matter to simply substitute the Bank's employee, Ms. Bryant, for the Bank would provide yet another avenue for resourceful attorneys to circumvent the LCAS. To the extent that the plaintiffs seek to assert a cause of action against Ms. Bryant for failure to make a loan, we find that the trial court was correct in sustaining the exception of no cause of action as to Ms. Bryant in her individual capacity. However, as discussed below, the plaintiffs may be able to amend to assert causes of action not based upon the failure to grant a loan.

OTHER POSSIBLE CAUSES OF ACTION
As set forth above, under the LCAS, without a written agreement, we find that the plaintiffs have no cause of action against the Bank or its employees for failure to grant a loan. The petition as a whole appears to have as its main contention the failure to grant a loan. However, we note that some of the allegations vaguely pertain to tortious interference with contract by Ms. Bryant and other Bank employees. There are also vague allegations of violation of government contracts by the Bank and wrongful seizure of funds by the Bank. While we make no ruling as to whether the plaintiffs may be able to state a cause of action in this matter, we remand and grant the plaintiffs 30 days to amend the pleadings to state a viable cause of action, if any may be made. La. C.C.P. art. 934. See Elliott v. Glass, 615 So.2d 1354 (La.App. 2d Cir.1993).

CONCLUSION
For the reasons stated above, we affirm the trial court judgment sustaining the exception of no cause of action raised by the defendants, Hibernia National Bank and Priss Bryant. We remand for further proceedings consistent with this opinion. Costs in this court are assessed one-half to the plaintiffs and one-half to the defendants.
AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS.
PEATROSS, J., concurs without written reasons.