886 So.2d 628 (2004)
Laura Diane Joiner CASON, Plaintiff-Appellee
v.
Joseph Paton CASON, III, Defendant-Appellant.
No. 38,974-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 2004.
*629 Barry W. Dowd, Monroe, for Appellant.
William H. Norris, III, Shreveport, for Appellee.
Before GASKINS, PEATROSS and LOLLEY, JJ.
LOLLEY, J.
Joseph Paton Cason, III ("Joseph") appeals the judgment of the Fourth Judicial *630 District Court, Parish of Ouachita, State of Louisiana, in favor of his former spouse, Laura Diane Joiner Cason ("Diane"). For the following reasons, we affirm.

FACTS
Diane and Joseph were married on September 14, 1984 and maintained their matrimonial domicile in Ouachita Parish, Louisiana. On March 11, 2002, the couple permanently separated. Then, on March 14, 2002, Diane and Joseph executed a handwritten agreement addressing various matters, one being the permanent periodic spousal support of Diane (the "support agreement"). Shortly thereafter, on March 21, 2002, Diane filed her petition for divorce, to which she attached the support agreement. A rule to show cause was set ordering Joseph to appear and show why the support agreement should not be recognized by the trial court, or why Diane should not be awarded the following: permanent spousal support; exclusive use, occupancy and control of the family home and its contents; and, use of a vehicle previously driven by her. Joseph executed a waiver of service and consented to judgment being rendered against him as prayed for in the petition.
The trial court judge entered a stipulated consent judgment on April 4, 2002, to which both Diane and Joseph consented (the "consent judgment"). Before a notary public, Joseph had signed a Verification and Consent to Judgment (the "verification"), which stated, in pertinent part, as follows:
Before me, the undersigned notary public, personally came and appeared the Defendant, Mr. Joseph Paton Cason, III, who being sworn did depose and state that he has fully read and understood the terms and contents of this Judgment on Rule; and, that he has sought and received legal advice from an attorney of his own choosing as to the terms and effects of this Judgment; and, finally, that he agrees to and consents to the signing of this Judgment in advance of the hearing currently scheduled for June 3, 2002, and freely and expressly waives his appearance at said hearing in light of this Judgment being approved, signed, and filed.
The consent judgment provided for specific payments to Diane by Joseph and stated that "[a]ll of the aforementioned payments are to be deemed contractual interim and permanent periodic spousal support, (alimony) and as such, shall continue without modification until such time as [Diane] remarries, dies, or enters into open concubinage...."
Later, in October, 2002, Diane filed a rule for article 102 divorce, requesting that the consent judgment be confirmed and made permanent in the final divorce judgment. Service was personally made on Joseph, and the divorce was granted on December 16, 2002, also confirming and making permanent the provisions contained in the consent judgment.
Subsequently, in August 2003, Joseph filed his rule to modify Diane's spousal support based on two claims. First, he argued that a reduction was warranted due to a change in his circumstances, and second, he alleged the award of contractual permanent periodic, non-modifiable, spousal support was against public policy. In response to Joseph's filing, Diane filed exceptions of no cause of action, res judicata, unauthorized use of summary process, and prescription. After a hearing on same, Diane's exceptions of res judicata and no cause of action were granted, and judgment was rendered in her favor.[1] Joseph's *631 rule to modify the spousal support was dismissed. Joseph appeals the trial court's judgment.

DISCUSSION

Exception of No Cause of Action
At issue is the trial court's granting of Diane's exceptions of no cause of action and res judicata. The exceptions were filed in response to Joseph's rule to show cause why the unmodifiable spousal support awarded Diane in the consent judgment should not be set aside.
The purpose of the peremptory exception of no cause of action is to determine the sufficiency in law of the petition. La. C.C.P. art. 927. It questions whether the law provides a remedy to the plaintiff against the defendant for the complaints set forth in the petition. Hall v. Zen-Noh Grain Corp., XXXX-XXXX (La.04/27/01), 787 So.2d 280; Fortenberry v. Hibernia Nat. Bank, 37,266 (La.App.2d Cir.08/20/03), 852 So.2d 1221. All well-pleaded allegations must be assumed as true, and any doubt is to be resolved in favor of the petition. In reviewing a trial court's ruling sustaining an exception of no cause of action, the reviewing court should subject the case to de novo review because the exception raises a question of law and the lower court's decision is based solely upon the sufficiency of the petition. Industrial Companies, Inc. v. Durbin, XXXX-XXXX (La.01/28/03), 837 So.2d 1207; Fortenberry, supra.
The primary issue in Joseph's appeal is whether the consent judgment (and the underlying support agreement it adopted) setting unmodifiable periodic spousal support for Diane was against public policy and, therefore, absolutely null. Contrary to Diane's claim on appeal, the trial court, in its oral reasons for judgment, did make a finding regarding the validity of the agreement, or the consent judgment, finding "this type of contract [not] to be contra bonus mores or against public policy" [sic]. For the following reasons, we agree.
A contract is absolutely null when it violates a rule of public order, as when the object of the contract is illicit or immoral. A contract that is absolutely null may not be confirmed. La. C.C. art.2030. Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity. La. C.C. art. 7.
Here, we have a consent judgment, agreed to by the parties. As stated, Joseph clearly agreed to the terms of the consent judgment at the time it was confected. The consent judgment adopted the terms of the agreement between Joseph and Diane which they signed three days after they physically separated and seven days before Diane filed her petition for divorce. This court addressed a similar agreement between the parties in Aufrichtig v. Aufrichtig, 34,909 (La.App.2d Cir.08/22/01), 796 So.2d 57, 61-62, wherein we stated that:
... the subject agreement [is] valid and enforceable. It has long been held that alimony after divorce can be made the subject of a contract. Such agreements are enforceable according to their own terms or the proven intent of the parties. These types of agreements have been described as "a bargained-for arrangement advantageous to both parties...." These contracts have also been classified as valid transactions or compromise in which the parties adjust their differences by mutual consent through a trade-off or bargaining away of rights.... (Citations omitted).
*632 In this case, Joseph argues that the consent judgment can be distinguished from the Aufrichtig consent judgment, because that one was clearly made in anticipation of or after the dissolution of the marriage. Joseph maintains, at the time the support agreement was made, it was not a foregone conclusion that his marriage with Diane would not survive. Thus, Joseph argues that this support agreement differs from the Aufrichtig agreement, and is against public policy.
Joseph correctly states the holding in Aufrichtig, where this court distinguished agreements made in anticipation of or after the dissolution of divorce from those confected in the event of divorce. However, in this case, the trial court correctly found that the consent agreement and underlying support agreement upon which it was based was not a violation of public policy. As stated, Joseph and Diane had separated at the time the support agreement was agreed upon and signed by them. Then, seven days thereafter, Diane filed her petition for divorce. Considering the close proximity in time between the two events, it is clear that the support agreement was entered into by the parties in anticipation of divorce. Moreover, Joseph claimed in his Rule to Show Cause that the support agreement was against public policy, because Louisiana law did not allow for contractual, non-modifiable spousal support. As we stated in Aufrichtig, Louisiana jurisprudence certainly allows for spousal support set in such a manner. Notably, Joseph did not claim that the support agreement was against public policy because it was confected only in the event of divorce. The trial court's judgment gave Joseph the opportunity to amend his original rule; however, Joseph failed to do so. So considering, we reject Joseph's claim that the consent judgment and underlying support agreement were in violation of public policy. The trial court properly determined that Joseph failed to state a cause of action.
As to the specific assignment of error raised by Joseph, the trial court's determination that Joseph failed to state a cause of action made moot the scheduled hearing on his originally filed Rule to Show Cause, particularly in light of the fact that the trial court allowed him the opportunity to amend said rule; thus the trial court did not err in removing his rule from the court docket, in light of the trial court's final determination.

Exception of Res Judicata
Another issue raised by Joseph is whether the trial court erred in granting Diane's exception of res judicata based on the consent judgment. It is well settled that a valid compromise can form the basis of a plea of res judicata because a compromise has the legal efficacy of a judgment. Brown v. Drillers, 93-1019 (La.01/14/94), 630 So.2d 741. However, on appeal, Joseph states that the consent judgment should not be res judicata because he claims not to have understood the consent judgment at the time he signed the verification. This argument has no merit.
As stated herein, Joseph appeared before a Notary Public and signed the verification, agreeing that he "... fully read and understood the terms and contents of this [consent judgment]... sought and received legal advice from an attorney of his own choosing as to the terms and effects of this [consent judgment] ... agrees to and consents to the signing of this Judgment." Now, Joseph claims he was not given an opportunity by the trial court to explain what he meant by signing the verification, or that he did not understand which rights he had released and the resulting consequences.
*633 Signatures are not mere ornaments. Tweedel v. Brasseaux, 433 So.2d 133 (La.1983). A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it. First South Farm Credit, ACA v. Gailliard Farms, Inc., 38,731 (La.App.2d Cir.08/18/04), 880 So.2d 223. It is not within the province of the courts to relieve parties of what they perceive to be bad bargains. Shepard v. Phycor of Ruston, Inc., 29,181 (La.App.2d Cir.05/07/97), 711 So.2d 288, citing, Kenny v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970).
Initially, we note that Joseph made no claims in his Rule to Show Cause that the consent judgment or support agreement was a nullity due to fraud, error, or duress, i.e. he never gave any reason to suggest that he was misled or coerced to sign the verification. Nor does the record show that he responded or objected to Diane's exception of res judicata with such claims. Apparently, Joseph raises this issue for the first time on appeal. Appellate courts generally will not consider issues raised for the first time on appeal. Costello v. Hardy, XXXX-XXXX (La.01/21/04), 864 So.2d 129.
However, even if we do consider his argument, considering the strong jurisprudence cited herein which serves to uphold signed written instruments, such an unsubstantiated claim alone does not suffice to re-litigate the consent judgment. Joseph obviously and validly agreed to the terms of the consent judgment as evidenced by his signature in front of a Notary Public. And, although Joseph argues that the trial court's determination prevented him from being able to introduce evidence to support this claim, he had ample opportunity to defend against Diane's exception of res judicata in brief and at the hearing of the matter. We note that the purpose of res judicata is to promote judicial efficiency and final resolution of disputes by preventing needless re-litigation. See, Lee v. Twin Bros. Marine Corp., 2003-2034 (La.App. 1st Cir.09/17/04), ___ So.2d ___, 2004 WL 2071713, citing, Avenue Plaza, L.L.C. v. Falgoust, 96-0173 (La.07/02/96), 676 So.2d 1077, 1079. A decision not to grant Diane's exception of res judicata would result in the needless relitigation of an issue already disposed of by the trial court-for no valid reason raised by Joseph; thus, we conclude that this argument is without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of Laura Diane Joiner Cason is affirmed, with costs of this appeal assessed to Joseph Paton Cason, III.
AFFIRMED.
NOTES
[1] Joseph was granted thirty days from the date of the judgment to amend and/or supplement his rule to show cause to an ordinary proceeding for nullity; however, he did not do so.