STEWART, J.
 

 11 Laura Diane Joiner Cason (“Diane”) filed a rule against her former husband, Joseph Patón Cason, III (“Joseph”), seeking additional spousal support in an amount sufficient to maintain her in the former matrimonial domicile, which is now owned by her pai'ents. After a hearing, the trial court rendered a judgment denying her request. Diane now appeals. Finding no abuse of the discretion afforded the trial court in determining support matters, we affirm.
 

 FACTS
 

 The parties’ judgment of divorce, obtained on December 16, 2002, confirmed and made permanent a judgment on rule entered on April 5, 2002, setting forth their contractual agreement concerning “interim and permanent periodic spousal support.” They agreed that Diane would continue to reside in the former matrimonial domicile pending a community property partition. In addition to paying $450 per month directly to Diane, Joseph agreed to pay her utility bills, including cable and security expenses, up to specified amounts each month; to maintain her health insurance and pay pharmacy bills and non-covered
 
 *1182
 
 medical expenses; and to pay the monthly interest on a mortgage encumbering the former matrimonial domicile. The agreement states:
 

 All the aforementioned payments are to be deemed contractual interim and permanent periodic spousal support, (alimony) and as such, shall continue without modification until such time as [Diane] remarries, dies, or enters into open concubinage. In the event that the parties sell the former matrimonial domicile, the parties will then have the right to renegotiate the aspect of spousal support related to the payment of the house note through their respective attorneys.
 

 IsThe agreement also provided that Joseph could continue to use the matrimonial domicile as his mailing address and that he would have access to a storage building behind the house.
 

 In
 
 Cason v. Cason,
 
 38,974 (La.App.2d Cir.10/27/04), 886 So.2d 628, this court affirmed the dismissal of a rule filed by Joseph to modify the spousal support and rejected the argument that the parties’ contractual support agreement was against public policy.
 

 On July 22, 2005, Joseph filed a petition for judicial partition of the community property. Under their settlement, Diane received the house and agreed to pay Joseph an equalizing sum in the amount of $40,500. Diane’s parents, Charles and Jean Joiner, assisted her in meeting the partition obligation by obtaining a $75,000 loan and using the proceeds to pay the equalizing payment to Joseph and to pay off the mortgage on the home. Diane continued to live in the former matrimonial domicile, which was now owned by her parents.
 

 On September 9, 2008, Diane filed a rule to have Joseph pay her an amount sufficient to enable her to continue to reside in the former matrimonial domicile. At the hearing on the rule, Diane’s attorney explained that she was seeking “the exact sum of money,” namely $650 per month, that it was costing her parents to pay the mortgage on the property, the insurance, and the property taxes.
 

 Diane’s mother, Jean Joiner, testified that she and her husband borrowed the money to satisfy Diane’s obligations in the community property partition and that they wanted Diane to continue living in the house lawhich is only a few blocks away from their home. Jean testified that Diane was to pay $650 per month as rental to live in the home but that she had not yet made a payment.
 

 Diane was not sure whether she had a rental agreement with her parents, but she testified that she would like to pay them $650 per month. She testified that she lives alone in the 3,000 square foot, three bedroom house.
 

 Most of the testimony came from Joseph. Regarding his payment of mortgage interest as required by the support agreement, he explained that the payment was on a line of credit secured by a mortgage on the former matrimonial domicile and that the payment was interest only in amounts ranging from $134 to $225 per month. Though not required by the support agreement, he also paid the homeowner’s insurance and property taxes, bringing the monthly payment to approximately $310 per month. Joseph explained that he entered the support agreement with Diane to “take care of things the way they were.” However, he noted that Diane’s medical expenses had “changed dramatically” over the years. Though his net income for 2008 totaled $38,309.31, his support payments to Diane and on her behalf totaled $20,913.36. When questioned about his intent regarding the provision in the support agreement providing for rene
 
 *1183
 
 gotiation of the housing aspect of the spousal support upon sale of the matrimonial domicile, Joseph testified that he understood it to mean that he would have the right to renegotiate spousal support. He also indicated that he did not |4have the intent to be responsible for paying Diane’s debt resulting from their partition agreement.
 

 While Diane’s attorney framed the issue as one of contractual interpretation based on the provisions of the support agreement, Joseph’s attorney framed it as a request for modification of support governed by La. C.C. art. 112, which limits the support obligation to no more than one-third of the obligor’s net income. Analyzing Diane’s rule both as a matter of contract and under La. C.C. art. 112, the trial court determined that neither provided a basis for ordering Joseph to pay Diane an additional $650 per month. Accordingly, the trial court rendered a judgment denying the rule and ordering that the spousal support “should remain unchanged.”
 

 Diane filed a motion for a new trial and a motion to clarify the judgment, asserting that it was “unclear from what point that the spousal support should remain unchanged.” The trial court denied the motion for a new trial and referred Diane to her pleadings on the rule as clarification of the judgment. Her appeal followed.
 

 DISCUSSION
 

 Diane raises three issues on appeal. First, she argues that the trial court erred in treating her rule as one to modify spousal support rather than as an effort to enforce Joseph’s contractual obligation to maintain her in the former family home. Second, she argues that the trial court erred in applying La. C.C. art. 112, when it was merely required to interpret the contract for spousal support. Third, Diane argues that the trial court erred in | ¡¡ruling that the spousal support should remain unchanged without indicating from what point or amount it should remain unchanged.
 

 Jurisprudence recognizes that post-divorce alimony can be determined by a contract between the parties, which is enforceable according to its own terms or the parties’ intent.
 
 Cason, supra; Aufrichtig v. Aufrichtig,
 
 34,909, p. 5-6 (La.App.2d Cir.8/22/01), 796 So.2d 57, 61-62,
 
 and cases cited therein.
 
 The interpretation of a contract involves the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046.
 

 We glean from Diane’s argument that she believes the contract for spousal support requires Joseph to provide support sufficient to maintain her in the former family home even though the parties have partitioned their community property and the home is now owned by Diane’s parents. However, the language of the support agreement set forth in the judgment on rule filed on April 5, 2002, does not support Diane’s argument or request for an additional $650 per month from Joseph.
 

 The clear and unambiguous language of the support agreement states, “[P]ending a community property partition [Diane] shall have the exclusive use, occupancy, and control of the former matrimonial domicile .... ” Although Joseph obligated himself to pay the monthly interest on the mortgage encumbering the former matrimonial domicile, the support agreement further provided that the parties would have the right to | (¡renegotiate the aspect of spousal support related to the payment of the house note in the event of a sale of
 
 *1184
 
 the former matrimonial domicile. These provisions indicate that the parties contemplated partition of their community property. They agreed that Diane would remain in the matrimonial domicile pending the partition and that Joseph would pay the mortgage interest obligation on the line of credit until the sale of the matrimonial domicile.
 

 The clear and unambiguous language of the support agreement does not obligate Joseph to maintain Diane in the former matrimonial domicile past partition and sale of the property. The agreement merely provides the right to renegotiate the house payment aspect of spousal support upon sale of the former matrimonial domicile. The inclusion of the right to renegotiate indicates that the parties had no agreement as to what, if anything, Joseph would pay toward housing in the event of a sale of the former matrimonial domicile. Therefore, Diane’s request for an additional $650 per month to maintain her in the former matrimonial domicile, which is now owned by her parents, is not supported by the spousal support agreement and cannot be determined by divining the common intent of the parties under that agreement. Her request cannot be enforced as a contractual obligation, because no such obligation exists.
 

 Because Diane argues that the trial court erred in applying La. C.C. art. 112 to this matter and because a contractual analysis does not support Diane’s request for additional support, it is not necessary for us to conduct an in-depth application of La. C.C. art. 112 to the facts. However, wejjobserve that La. C.C. art. 112(C) limits a support award to no more than one-third of the obligor’s net income. Under the support agreement and as shown by the evidence, Joseph has been paying support exceeding 50 percent of his net income. We reject Diane’s argument that Joseph waived application of the limit set by La. C.C. art. 112. Even though Joseph agreed to pay in excess of what is allowed by Article 112, his agreement would not preclude the trial court or this court from considering Article 112 in determining whether he should be ordered to pay additional amounts. Clearly, application of Article 112 would result in a denial of Diane’s rule.
 

 Lastly, Diane takes issue with the trial court’s ruling that spousal support should remain unchanged. It is obvious that this means the spousal support agreement remains in effect except as to the payments previously made by Joseph for mortgage interest on the former matrimonial domicile. Because the community property has been partitioned and the house sold, he is no longer obligated to make such payments. Otherwise, the support agreement remains in effect.
 

 CONCLUSION
 

 Finding no abuse of discretion by the trial court in denying Diane’s rule for additional support, we affirm. Costs of appeal are assessed against Diane.
 

 AFFIRMED.