DREW, J.
 

 | Safeway Insurance Company of Louisiana and’Henry Lee, Jr. (“Henry Lee, Jr.”), defendants, appeal a judgment awarding plaintiff, Curtis D. Lee (“Lee”), special damages of $1,956.00 and general damages of $7,500.00 for injuries sustained or preexisting injuries aggravated in a collision on November 19, 2008. Because the record contains insufficient evidence to establish the connection between plaintiffs
 
 *115
 
 alleged injuries and this wreck, the judgment of the trial court is reversed and the plaintiffs action is dismissed with prejudice.
 

 A little over two months before the collision which is the subject of this litigation, Lee was in another auto accident on September 15, 2008. The first crash occurred when Lee was traveling about 60 mph behind a U-Haul van which suddenly pulled to the right revealing a car stopped in the road. Although he slammed on his brakes, Lee collided with the stopped car and another vehicle then hit him. He could not change lanes because the other lanes were occupied. Lee was treated and released at the emergency room of Schum-pert Hospital.
 

 In the second accident (November 19, 2008) from which Lee is seeking damages in this litigation, Lee stated that he was a guest passenger in his own car being driven with his permission by his cousin, Henry Lee, Jr., who failed to yield at a yield sign and collided with a car driven by Nolan S. Taylor. The parties stipulated to liability. Stating his vehicle was totaled in the collision, Lee asserted that in the wreck, he sustained lumbar and cervical strain, lower back pain, and general body aches and bruises.
 

 IgLee sought care from two different chiropractors, each of whom treated Lee apparently without being aware Lee had been in another accident for which he was receiving therapy from another chiropractor. The following timeline sets out the accidents and the treatment related to each.
 
 The items relevant to the second accident are indicated in italics.
 
 Dates on which Lee was treated by both chiropractors are shown in boldfaced type and underlined.
 

 September 15, 2008 First accident
 

 October 10, 2008 First appointment with Dr. Grady Michael Stimits for first accident, at which he received a detailed exam, Hot and Cold Packs, and Mechanical Traction
 

 October 13, 2008 Treatment by Dr. Stimits, including Chiropractic Manipulative Treatment (“CMT”) 8-4 Region, Mechanical Traction, Hot and Cold Packs, and Myofacial Release
 

 October 20, 2008 Treatment by Dr. Stimits, including CMT 3-4 Region, Mechanical Traction, Hot and Cold Packs, and Myofacial Release
 

 October 27, 2008 Treatment by Dr. Stimits, including CMT 3-4 Region, Mechanical Traction, Hot and Cold Packs, and Myofacial Release
 

 November 3, 2008 Treatment by Dr. Stimits, including CMT 3^4 Region, Mechanical Traction, Hot and Cold Packs, and Myofacial Release
 

 November 5, 2008 Treatment by Dr. Stimits, including CMT 3-4 Region, Mechanical Traction, Hot and Cold Packs, and Myofacial Release
 

 November 10, 2008 Treatment by Dr. Stimits, including CMT 3-4 Region, Mechanical Traction, Hot and Cold Packs, and Myofacial Release
 

 IgNovember 17, 2008 Treatment by Dr. Stimits, including CMT 3-4 Region, Mechanical Traction, Hot and Cold Packs, and Myofacial Release
 

 November 19, 2008 Second accident
 

 November 24, 2008 Re-exam by Dr. Stimits and treatment including Mechanical Traction and Hot and Cold Packs
 

 December 1, 2008 Treatment by Dr. Stimits, including CMT 3^4 Region, Mechanical Traction, Hot and Cold Packs, and Myofacial Release
 

 December 8, 2008 Treatment by Dr. Stimits, including CMT
 
 2>-A
 
 Region, Mechanical Traction, Hot and Cold Packs, and Myofacial Release
 

 
 *116
 

 December 8, 2008 First appointment with Dr. John Lawrence for second accident
 

 December 12, 2008 Treatment by Dr. Lawrence, including CMT 3-4 Regions, Hot Pack, Mechanical Traction, Electrical Stimulation, and Hydrotherapy
 

 December 15, 2008 Treatment by Dr. Stimits, including CMT 3^4 Regions, Mechanical Traction, Hot and Cold Packs, and Myofacial Release
 

 December IS, 2008 Treatment by Dr. Lawrence, including CMT 3-4- Regions, Hot Pack, Mechanical Traction, Electrical Stimulation, and Hydrotherapy
 

 December 22, 2008 Treatment by Dr. Lawrence, including CMT 3-4 Regions, Mechanical Traction, Electrical Stimulation, and Hydrotherapy
 

 December 29, 2008 Treatment by Dr. Stimits, including CMT 3-4 Region, Mechanical Traction, Hot and Cold Packs and Myofacial Release
 

 December 29, 2008 Treatment by Dr. Lawrence, including CMT 3-4 Regions, Mechanical Traction, Electrical Stimulation, and Hydrotherapy
 

 j^January 5, 2009 Treatment by Dr. Stimits, including re-exam, Mechanical Traction, and Hot and Cold Packs
 

 January 5, 2009 Treatment by Dr. Lawrence, including CMT 3-4 Regions, Mechanical Traction, Electrical Stimulation, and Hydrotherapy
 

 January 12, 2009 Treatment by Dr. Lawrence, including CMT 3-4 Regions, Mechanical Traction, Electrical Stimulation, and Hydrotherapy
 

 January 20, 2009 Last appointment with Dr. Stimits, who did re-exam
 

 January 21, 2009 Treatment by Dr. Lawrence, including CMT 3-4 Regions, Mechanical Traction, and Hydrotherapy
 

 January 26, 2009 Last appointment with Dr. Lawrence with treatment including CMT 3-4 Regions, Mechanical Traction, and Hydrotherapy
 

 TRIAL TESTIMONY
 

 The parties stipulated that Dr. Grady Michael Stimits, a chiropractor called by the defense, was an expert. In brief, the plaintiff stated that the only witnesses at trial were himself and Dr. John Lawrence. Actually, the only trial witnesses were the plaintiff and Dr. Stimits. The exhibits were the accident report, the medical records from both chiropractors, and the insurance policy submitted as a joint exhibit. Although Lee’s deposition was referenced in his cross-examination, that deposition was not filed into evidence.
 

 Dr. Stimits testified that:
 

 • he treated Lee for injuries sustained in the September 15, 2008, wreck;
 

 • the course of treatment ran from October 10, 2008, until January 20, 2009;
 

 |s* he was unaware of the November 19, 2008, accident;
 

 • he could not testify as to what Lee may or may not have told his staff, although he thought it likely his staff would have mentioned a second accident;
 

 • it was important that he be informed about a second accident because of issues involving injuries, treatment, and litigation;
 

 • he did not know that Lee was simultaneously being treated by another doctor;
 

 • Lee initially complained of pain in his neck and back, weakness and pain in his right shoulder, and numbness in his right arm;
 

 • during a reevaluation examination on November 24, 2008, Lee reported pain on the right side where the pelvis meets
 
 *117
 
 the spine, along with neck and back pain,
 
 [1]
 
 and right arm numbness;
 

 • on that date, there was improvement in ranges of motion and decreases in spasms and numbness;
 

 • though Lee had reported pain in all ranges of motion in the initial exam on October 10, he had pain in only one range of neck motion on November 24;
 

 • the initial evaluation showed spasms and tenderness all the way down his back;
 

 • by November 24, the tenderness and spasms were only on the right side of his back;
 

 • by January 5, 2009, Lee’s range of motion was not quite normal, but pretty close, on his neck and back, with some mild numbness in the right arm and pain in the neck;
 

 • Lee reported no pain, and was normal neurologically on January 20, 2009;
 

 • when checked for spasms on that date, there was no abnormal tension or tightness and both his neck and back were pain free;
 

 • the doctor found no disability and a good prognosis;
 

 |r* too many chiropractic adjustments “can actually hard (sic) the patient”;
 

 • thus it was absolutely vital that patients be truthful with the chiropractor; and
 

 • not knowing another chiropractor is performing adjustments on a patient can create a lot of issues.
 

 On cross-examination, Dr. Stimits stated he was certain a reference to the right knee in the records was an error because all other references were to the left knee. At the November 24 examination (just days following the November 19 wreck), Lee had signs and symptoms of injury. On January 5, he still had mild numbness
 

 in the right arm and off-and-on pains in the neck and back, while reporting his left knee was okay and he was sleeping much better. The doctor recommended Lee be treated twice a week but he said his work schedule would allow only once a week.
 

 Lee’s final visit was January 20, 2009, at which time Dr. Stimits thought it unlikely that he was pain free as the doctor had observed spasms on January 5. Lee said he needed to go and Dr. Stimits respected that request, which is common with his patients who decide they can no longer continue treatment. The chiropractor suspected that Lee still had some pain and discomfort on January 20.
 

 Regarding the November 19 accident, Lee testified that:
 

 • he received a knot on his head;
 

 • the right side of his body hit the door; and
 

 • his injuries included headache, pain in his right arm, lower right back, knee and lower leg, as well as numbness from his right shoulder to his elbow.
 

 |7Lee’s attorney sent him to a chiropractor, Dr. John Lawrence, whom he first saw on December 8, 2008, and last saw on January 26, 2009. Lee asked the doctor to release him because he had no transportation to continue treatment and work. He still had discomfort at the January 18, 2011, trial.
 

 Lee testified that as a result of the November 19 accident, he was no longer able to play baseball and that his sleep was restless due to arm and leg pain. He also described being nervous with people close by as a result of the November 19 wreck. Because of these injuries, he also said he was not able to continue his job as a caretaker for an elderly couple, which involved lifting the man who was wheelchair
 
 *118
 
 bound. Never having been arrested, Lee testified that his only legal trouble was having his license suspended for an unpaid traffic ticket when he was 15.
 

 Lee acknowledged on cross examination that in December 2008 and January 2009 he was working two jobs (caretaker of the elderly and security guard at Villagio) and stated at his deposition that he discontinued medical treatment because he had to go to work. Lee did not mention his transportation problems at the deposition. He agreed that he was being treated by two different chiropractors, Dr. Stimits (for the September accident) and Dr. Lawrence (for the November accident). Additionally, Lee said that the injuries for which he sought to recover in this action were the same injuries for which Dr. Stim-its treated him because Lee contended his injuries from the first accident were aggravated by the second collision.
 

 At his deposition, Lee stated, “I don’t think I told him (Dr. Stimits about the second accident).” When questioned about whether he informed | sDr. Lawrence about his first accident, Lee’s response was unclear. When asked to explain why he did not think it was important to tell each doctor he was being treated by the other, Lee stated, “Naw (inaudible) two separate accidents (inaudible).”
 

 On redirect examination, Lee stated in response to an inquiry about whether he informed Dr. Stimits about the second collision, “Yeah. I think I told him. I am not for sure.... I could have told the secretary.”
 

 With a referral from his attorney, Lee first saw Dr. Lawrence on December 8, 2008, and received extensive examination and diagnostic testing. Dr. Lawrence’s initial report, right after the November accident, noted complaints of neck and low back pain along with right shoulder and arm pain. At the December 8, 2008, office visit, Lee’s reported symptoms were:
 

 • dull throbbing bilateral headaches;
 

 • sharp burning, cramping, stinging bilateral neck pain;
 

 • dull spastic, throbbing constricting pain on the right side of his lower back;
 

 • sharp, shooting, stinging pain in right shoulder;
 

 • sharp, shooting, cramping, stinging pain in upper right arm;
 

 • weakness, listlessness, lack of energy; and
 

 • inability to sleep due to pain.
 

 Dr. Lawrence’s initial report contained the following very enlightening information:
 

 HISTORY:
 

 I have determined that Mr. Lee’s history has not contributed to his present condition. Mr. Lee denies any prior symptoms, 19injuries or accidents similar to those described in this report. Therefore, it is my opinion, based on medical probability, that this patient’s condition, as outlined in this report, is the direct result of the injuries sustained on November 19, 2008, as described by the patient.
 

 Social History:
 

 The patient’s social history is non-contributory in that it does not contain any information that would have contributed to his present complaints. The patients’s family history in non-contributory in that it does not contain any information that would have contributed to his present complaints.
 

 Noting that he expected Lee to experience favorable treatment results, Dr. Lawrence diagnosed Lee with whiplash injury, multiple subluxations (term generally meaning a misalignment) of cervical, thoracic, and lumbosacral spine; headache,
 
 *119
 
 myalgia, lumbosacral sprain, and sleep disturbances.
 

 On a December 12, 2008, office visit, Dr. Lawrence reported that Lee was progressing as expected and experienced some improvement. On December 29, 2008, Dr. Lawrence noted that Lee was again progressing as expected and showed moderate improvement from the previous visit. The identical assessment was made on January 5, 2009. On January 12, 2009, Dr. Lawrence observed that Lee’s progress was moving along as expected and he had experienced moderate improvement. On January 20, 2009, the chiropractor observed that Lee was progressing as expected and showed marked improvement. In all the foregoing reports, Dr. Lawrence stated that Lee was receiving medically necessary therapeutic care and had not yet reached MMI (“maximum medical improvement”).
 

 On January 26, 2009, Dr. Lawrence found somewhat restricted range of motion in the cervical spine along with subluxa-tions and slight pain on |10palpation of his cervical and lumbar spine. The assessment was that Lee was progressing as expected, had not reached MMI, but showed a marked improvement since his last visit. The doctor recommended chiropractic adjustments once a week for two weeks. That was the last visit Lee made to Dr. Lawrence.
 

 REASONS FOR JUDGMENT
 

 After hearing the testimony, the trial court found Lee to be a “real credible” witness who sustained the injuries alleged. Additionally, the trial court concluded that the second accident aggravated some of the old injuries and caused a couple of new injuries. Other factors cited were plaintiffs inability to play baseball and the pain suffered. The judgment granted plaintiff special damages of $1,956.00 and general damages of $7,500.00.
 

 DISCUSSION
 

 It is axiomatic that a court of appeal may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” See
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989). In
 
 Welch v. Willis-Knighton Pierremont,
 
 45,554 (La.App.2d Cir.11/17/10), 56 So.3d 242,
 
 writs denied,
 
 2011-0075 (La.2/25/11), 58 So.3d 457,
 
 and
 
 2011-0109 (La.2/25/11), 58 So.3d 459, this court explained that to reverse a trial court, the appellate court must find that a reasonable factual basis does not exist in the record for the finding and that the determination is clearly wrong. Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. If the documentary or objective evidence so contradicts the witness’s testimony, or the testimony is so internally inconsistent or implausible on its Inface that a reasonable factfinder would not credit the testimony, the court of appeal may find manifest error even where the finding is purportedly based on a credibility determination. Absent a finding of clear error and if the factfinder’s conclusion is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
 
 Welch v. Willis-Knighton Pierremont, supra.
 

 In a personal injury action seeking damages, the plaintiff has the burden of proving a causal relationship between the accident and any alleged injuries. The plaintiff must prove causation by a preponderance of the evidence. That burden is satisfied when the plaintiff proves through medical and lay testimony that it was more probable than not that the injury was caused by the accident.
 
 Bradshaw v.
 
 
 *120
 

 Brookshire Grocery Co.,
 
 38,960 (La.App.2d Cir.10/27/04), 886 So.2d 628.
 

 Whether the accident caused the plaintiffs injuries is a factual question which should not be reversed on appeal absent manifest error. Reversal is warranted only if the appellate court finds that a reasonable factual basis for the trial court’s finding does not exist in the record and that the finding is clearly wrong on the record.
 
 Bradshaw, supra.
 

 .The trial court found Lee to be a credible witness, and we note that Dr. Lawrence’s tests for malingering were negative. However, we respectfully find that a reasonable factual basis does not exist in this record to support the conclusion that Lee’s injuries were sustained in or worsened by the November 19, 2008, mishap. The medical evidence either fails to support or simply contradicts Lee’s assertion that his injuries were related to the second accident. The trial court’s decision was clearly wrong.
 

 112Lee was poorly served by the failure to provide the chiropractors with an accurate history of his dual accidents. Without that information, Dr. Lawrence’s opinion that Lee’s injuries were a direct result of the November 19, 2008, wreck is fatally flawed, since those injuries were substantially present prior to the accident.
 

 Lee’s testimony that his injuries were aggravated by the November 19, 2008, accident is belied by the fact that Dr. Stimits noted improvement in Lee’s condition on his November 24, 2008, visit. Lee’s statements that his injuries were worsened by the second wreck are not supported by the medical evidence in the record. Simply put, Lee failed to prove he suffered new injuries or aggravations of preexisting conditions in the November collision. On this record, a decision to the contrary is manifestly erroneous.
 

 DECREE
 

 The judgment of the trial court is reversed, and plaintiffs action is dismissed with prejudice at his costs.
 

 REVERSED.
 

 [1]
 

 . Upon flexion and extension. The doctor also noted that on November 10, 2008, the patient had a tender right side joint, referring to the right sacroiliac joint.